IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHARLES STOVER, et al.,

           Plaintiffs,

v.                                           CIVIL ACTION NO.  2:11-cv-00180

MATTHEWS TRUCKING, INC., et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the defendant Robert C. Matthew's Motion to Dismiss [Docket 19] and the defendant Matthews Trucking, Inc.'s Motion to Dismiss [Docket 21], which has been converted into a Motion for Summary Judgment [Docket 36]. For the reasons set forth below, the court **GRANTS** Robert C. Matthew's Motion to Dismiss and **DENIES** Matthews Trucking, Inc.'s Motion to Dismiss and Motion for Summary Judgment.

**I.    Background**

The plaintiff, Charles Stover ("Stover"), was a long-distance truck driver employed by Matthews Trucking, Inc. ("Matthews Trucking"). Stover and his wife, Rhonda Stover, are residents of Logan County, West Virginia, and Matthews Trucking is a Pennsylvania corporation that transports mail in several states for the U.S. Postal Service. According to the Complaint, on or about March 27, 2009, Stover was delivering mail to the post office in Charleston, West Virginia. As he opened the rear door of the truck, the tensioners on the tension cable jammed and Stover's hand caught in the door handle, which caused him to fall to the ground. Stover

suffered injuries to his neck, spine, and shoulders. He alleges that these injuries have resulted in "great pain and suffering to mind and body." (Compl. [Docket 1], at ¶ 25.)

Charles and Rhonda Stover filed their Complaint on March 21, 2011. It alleges a deliberate intent cause of action under West Virginia Code § 23-4-2 against Matthews Trucking and its president, Robert C. Matthews ("Matthews"), on behalf of Charles Stover, and loss of consortium on behalf of Rhonda Stover. On July 15, 2011, Matthews and Matthews Trucking each filed a Motion to Dismiss. Because matters outside the pleadings were presented with Matthews Trucking's Motion to Dismiss, the court ordered that the Motion to Dismiss be treated as a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d). A hearing was held on November 8, 2011. These matters have been fully argued and briefed and are now ripe for review.

### II. Matthews Trucking's Motion for Summary Judgment

#### A. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court will not weigh the evidence and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*,

477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere scintilla of evidence in support of his or her position.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion.  *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

*B. Discussion*

Employers in West Virginia who subscribe and pay into the West Virginia Workers' Compensation Fund are "not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring."  W. VA. CODE § 23-2-6.  However, this immunity is lost "if the employer or person against whom liability is asserted acted with 'deliberate intention.'"  W. VA. CODE § 23-4-2(d)(2).  To bring a deliberate intent cause of action, both the employer and employee must be subject to the West Virginia Workers' Compensation Act ("the Act").  W. VA. CODE § 23-2-1(a); W. VA. CODE § 23-2-1a.  Matthews Trucking asserts that Stover is not subject to the Act because Matthews Trucking is a Pennsylvania corporation that is not licensed to do business in West Virginia and Stover worked 80 percent of his shift outside of West Virginia.  The plaintiffs claim that there remain material issues of fact that should be decided by a jury.

The Act provides that:

> [A]ll persons, firms, associations and corporations regularly employing another person or persons for the purpose of carrying on any form of industry, service or

3

> business in this state, are employers within the meaning of this chapter and are required to subscribe to and pay premium taxes into the workers' compensation fund for the protection of their employees and are subject to all requirements of this chapter.

W. VA. CODE § 23-2-1(a). In addition,

> Employees subject to this chapter are all persons in the service of employers and employed by them for the purpose of carrying on the industry, business, service or work in which they are engaged, including, but not limited to: Persons regularly employed in the state whose duties necessitate employment of a temporary or transitory nature by the same employer without the State.

W. VA. CODE § 23-2-1a(a)(1).

In *Van Camp v. Olen Burrage Trucking, Inc.*, the Supreme Court of Appeals of West Virginia found that the defendant was not an employer required to subscribe to the Workers' Compensation Fund. 184 W. Va. 567, 570 (1991). The court explained:

> [T]he following factors are dispositive of the issue of whether an employer must subscribe to the Fund pursuant to W. Va. Code § 23-2-1: (1) whether the employer obtained authorization to do business in West Virginia; (2) whether the employer operates a business or plant or maintains an office in West Virginia; (3) whether the injured employee was hired in West Virginia; (4) whether the employer regularly hires other West Virginia residents to work at a West Virginia facility or office; and, (5) whether the employee in question worked on a regular basis at a West Virginia facility for the employer prior to the injury at issue. If the answer, as in this case, to each of the above questions is negative, then the employer is not required to subscribe to the Fund as he cannot be said to regularly employ a person for the purpose of operating "any form of industry, service or business in the state."

*Id.* The court in *Van Camp* found that Burrage Trucking was not authorized to do business in West Virginia and did not own West Virginia real estate or maintain an office in West Virginia. Additionally, Burrage Trucking had not hired employees in West Virginia. The court also noted that Van Camp did not do any intrastate hauling. Instead:

> On those few occasions when Van Camp's employment required him to drive in West Virginia, either his origination or destination was a West Virginia location, but never both. Accordingly, he cannot be said to have worked for Burrage Trucking *in* West Virginia on a regular basis prior to the accident at issue.

4

*Id.* at 569-70.

In *McGilton v. U.S. Xpress Enterprises, Inc.*, the court used these same five factors to determine whether the plaintiff employee was subject to the Act. 214 W. Va. 600 (2003). The court noted that "[a] key factor in this analysis is regular work by the worker in West Virginia prior to injury, a factor originally expressed in W. Va. Code 23-2-1a covering 'persons regularly employed in the state.'" *Id.* at 603. In *McGilton*, the plaintiff, a West Virginia resident, was employed as a truck driver by an Ohio corporation and injured in Texas. The court explained that:

> Although the appellants suggested that he parked his truck in West Virginia between runs and that he might have occasionally made deliveries inside the state, the evidence shows that the overwhelming bulk of his activity occurred outside the state, and, in this Court's opinion, it cannot be said that he was regularly employed within the state prior to his injury, within the meaning of West Virginia law, or that his employment out of state was "temporary," so as to entitle him to benefits of West Virginia's Workers' Compensation Act.

*Id.* at 603-04.

Applying these tests to the instant case, I must determine whether Matthews Trucking was required to subscribe to the Fund and whether Stover is subject to the Act. The following facts are undisputed: (1) Matthews Trucking is not authorized to do business in West Virginia; (2) Matthews Trucking does not operate a business or plant or maintain an office in West Virginia;[1] (3) Stover was hired over the telephone, while he was in his home in West Virginia and the employer called from Pennsylvania; (4) Matthews Trucking has forty employees total and hired three West Virginia residents as employees, and it does not advertise positions in West Virginia; and (5) Stover spent 80 percent of each daily shift transporting mail outside of West

---

[1] At the hearing, the plaintiff's counsel maintained that Matthews Trucking rents a lot in Southridge and drops off and picks up mail every day in Charleston, so a jury could conclude from this that it was operating a business in West Virginia.

5

Virginia; more specifically, Stover began each shift at a lot in Southridge where the truck was parked overnight; he spent approximately fifteen minutes at the Postal and Distribution Center in Charleston, West Virginia, and then he drove on Interstate 64 West toward Huntington, and spent the remainder of his shift in Kentucky and Tennessee.

As noted earlier, "[a] key factor in this analysis is regular work by the worker in West Virginia prior to injury." *McGilton*, 214 W. Va. at 603. The importance placed on this factor by the court in *McGilton* comports with the statutory language, which states that: "All . . . corporations regularly employing another person or persons," W. VA. CODE § 23-2-1(a), and "Persons regularly employed in the State," W. VA. CODE § 23-2-1a, are subject to the Act. I **FIND** that Stover regularly worked in West Virginia, thereby requiring Matthews Trucking to subscribe to the Workers' Compensation Fund and subjecting Stover to the Act. At the hearing, defense counsel cited *McGilton* to suggest that "regular" employment should be defined as employment when the "bulk," or more than half, of an employee's work occurs within the state. "Regular," however, is defined as "steady or uniform in course, practice, or occurrence: not subject to unexplained or irrational variation," or "returning, recurring, or received at stated, fixed, or uniform intervals." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1913 (2002). For example, a truck driver may regularly work in several states if the driver drives through these states on a recurring basis, without working the majority of his time in any given state. To say that regularity equates to more than 50 percent is to stretch the word's meaning beyond plausibility. In *McGilton*, the plaintiff worked a majority of his time out of the state *and* did not work in West Virginia on a steady basis. In the instant case, however, Stover began each shift in West Virginia. Each shift required him to pick up his truck in West Virginia, spend approximately fifteen minutes at the Postal and Distribution Center in West Virginia, and drive

through West Virginia to Kentucky. This constitutes regular employment in West Virginia, even though he did not work the majority of any given work day within the state. Therefore, I **FIND** that Stover is subject to the Act and eligible to bring a deliberate intent cause of action under it, and **DENY** Matthews Trucking's Motion for Summary Judgment.[2]

### III.    Robert C. Matthews's Motion to Dismiss

#### A. *Standard of Review*

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 129 S. Ct. at 1949-50. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the

---

[2] I note that under W. Va. Code § 23-2-1c, parties can agree to be bound by the laws of another state and the rights under the laws of that state become the exclusive remedy against the employer, regardless of where the injury occurred. In the instant case, no such agreement existed between Stover and Matthews Trucking.

plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint must contain enough facts to "nudge[] [a] claim across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Discussion

The immunity provided for by the Act extends to officers and employees of such employers when they are "acting in furtherance of the employer's business and [do] not inflict an injury with deliberate intention." W. VA. CODE § 23-2-6a. A plaintiff can prevail on the deliberate intent cause of action in two ways. First, a plaintiff can prove "that the employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee." W. VA. CODE § 23-4-2(d)(2)(i). Alternatively, a plaintiff can prove the following five elements:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the *employer*, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition.

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of

>    the *employer*, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
>    (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the *employer* nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
>
>    (E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one [§ 23-4-1], article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W. VA. CODE § 23-4-2(d)(2)(ii) (emphasis added). The Stovers rely solely on § 23-4-2(d)(2)(ii). Matthews asserts that this provision applies only to employers, and not to individual officers or co-workers, as evidenced by the statutory language within § 23-4-2(d)(2)(ii). In contrast, the Stovers point to the introductory language that refers to both employers and persons.[3] The Supreme Court of Appeals of West Virginia has not reached this question, and the case law diverges.

The plaintiffs cite *Weekly v. Olin Corp.*, 681 F. Supp. 346 (N.D. W. Va. 1987) for support. In that case, Robert Weekly brought suit against his out-of-state employer and Robert Higgins, a citizen of West Virginia, alleging a deliberate intent cause of action. *Id.* at 347. In determining whether Higgins was fraudulently joined, the court held that Weekly stated a claim against Higgins sufficient to prevent remand. *Id.* at 352. Addressing the applicability of § 23-4-2(d)(2)(ii) to co-workers, the court first noted that while § 23-4-2(d)(2)(i) applies to an "employer or person," § 23-4-2(d)(2)(ii) only uses the word "employer." *Id.* at 351-52. The

---

[3] The introductory language states: "The immunity from suit provided under this section and under sections six [§ 23-2-6] and six-a [§23-2-6a], article two of this chapter may be lost only if the employer or person against whom liability is asserted acted with 'deliberate intention'." W. VA. CODE § 23-4-2(d)(2).

9

court, however, found the plaintiff's construction of the statute—that a plaintiff can bring a cause of action against a co-worker under § 23-4-2(d)(2)(ii)—"more plausible," relying on the introductory language.

The plaintiffs also point to a 2006 Memorandum Opinion and Order that I wrote granting a motion to remand. *Burch v. Monarch Rubber Co.*, No. 2:06-cv-760 (S.D. W. Va. Dec. 8, 2006). In that case, the plaintiff, David Burch, brought a deliberate intent cause of action under § 23-4-2(d)(2)(ii) against his employer and his supervisor, Mr. Greathouse. In denying the motion to remand, I explained that "[t]he court must examine West Virginia law to determine whether there is '*no possibility*' that the plaintiff would be able to establish a cause of action against Mr. Greathouse, the in-state defendant." *Id.* at 3. (emphasis added). Noting the difference in language in the introduction and the elements in § 23-4-2(d)(2)(ii), I explained that it is possible for the introductory language to be interpreted to apply to both subsections. *Id.* at 5. I also pointed to the *Weekly* decision and held that although I did not need to find that the statue applies to employees, there was a "glimmer of hope" for the plaintiff's claim against Mr. Greathouse. *Id.* at 6.

A number of subsequent decisions have denied claims of fraudulent joinder and found that there is a possibility that the plaintiff can establish a cause of action against a co-worker under § 23-4-2(d)(2)(ii). *Bledsoe v. Brooks Run Mining Co.*, No. 5:11-cv-464, 2011 WL 5360042, at *3 (S.D. W. Va. Nov. 4, 2011) (Berger, J.); *Williams v. Harsco Corp.*, No. 1:10-cv-206, 2011 WL 3035272, at *3 (N.D. W. Va. July 22, 2011) (Keeley, J.); *Hoffman v. Consolidation Coal Co.*, No. 1:10-cv-83, 2010 WL 4968266, at *4 (N.D. W. Va. Dec. 1, 2010) (Stamp, J.).

In support of its Motion to Dismiss, the defendant relies on *Evans v. CDX Services, L.L.C.*, where the court found that a non-diverse co-employee was fraudulently joined. 528 F. Supp. 2d 599 (S.D. W. Va. 2007) (Johnston, J.). In *Evan*s, the court recognized the *Weekly* decision and its reliance on the introductory language. *Id.* at 604-05. But it disagreed with the conclusion in *Weekly*. In doing so, the court explained that "'when the language . . . is clear and unambiguous and the legislative intent is clearly disclosed by such language, it is the duty of the courts to apply such a statute according to the legislative intent therein clearly expressed.'" *Id.* at 605 (citing *Roberts v. Consolidation Coal Co.*, 208 W. Va. 218, 233 (2000)). The court then cited another West Virginia Supreme Court of Appeals case, stating that two statutes "must be read in a fashion to give effect to all of their terms, if possible. No part of a statute is to be treated as meaningless and we must give significance and effect to every section, clause, word or part of a statute." *Id.* (citing *Savilla v. Speedway Superamerica*, *L.L.C.*, 219 W. Va. 758, 763 (2006)). Accordingly, the court found that § 23-4-2(d)(2)(ii) applies only to actions against employers and dismissed the individual co-defendant. *See also Hager v. Cowin & Co., Inc.*, No. 2:10-cv-1138, 2011 WL 2175075, at *3 (S.D. W. Va. June 3, 2011) (Johnston, J.); *King v. Sears Roebuck & Co.*, No. 1:10-1024, 2011 WL 672065, at * 4 (S.D. W. Va. Feb. 14, 2011) (Faber, J.).

In the instant case, I examine § 23-4-2(d)(2)(ii) in the context of a motion to dismiss, rather than a motion to remand alleging fraudulent joinder. I do not determine, like I did in the fraudulent joinder context in *Burch v. Monarch Rubber Co.*, whether there is a "glimmer of hope" that the plaintiff could maintain a cause of action. Instead, I must determine whether the statutory provision in fact applies to "persons" or only to employers. *See Cartwright v. Superior Well Servs., Inc.*, No. 1:11-cv-298, 2011 WL 4528251, at * 3 (S.D. W. Va. Sept. 28, 2011) (Faber, J.) (holding that § 23-4-2(d)(2)(ii) applies only to employers and dismissing the suit

against the individual defendant). I find Judge Johnston's reasoning in *Evans* persuasive. Looking to the statutory language and giving effect to each section and word, I hold that Matthews is "not subject to suit under § 23-4-2(d)(2)(ii) because that subsection only provides for actions against employers." *Evans*, 528 F. Supp. 2d at 605. Therefore, I **GRANT** Matthews's Motion to Dismiss. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 9, 2011

*Joseph R. Goodwin*
Joseph R. Goodwin, Chief Judge